# IN THE WESTERN DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| In Re the Matter of: ) | |
| ) | |
| SHERRY L. BOWLING, ) | No. 06-CV-5041-SW-FJG |
| ) | |
| Debtor/Appellant ) | |
| ) | |

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION, CASE NO. 01-31346 JWV
HONORABLE JERRY W. VENTERS, JUDGE

## ORDER

### I. BACKGROUND

This case involves a Chapter 7 bankruptcy filed by Debtor/Appellant Sherry L. Bowling. Ms. Bowling listed her personal injury claim and claimed that it was exempt. The Trustee filed an objection to the claimed exemption. Ms. Bowling responded to the objection, denying it. The Bankruptcy court entered an order granting the Trustee's objection to the debtor's exemptions as to $50,000. Ms. Bowling moved the bankruptcy court to reconsider and vacate this order and enter an order sustaining her claimed exemption regarding her personal injury claim. On August 6, 2004, the Bankruptcy court denied this motion and granted the Trustee's motion to dismiss. The Debtor appealed to this Court which reversed and remanded the case on September 30, 2005. The Order remanding the case instructed the Bankruptcy Court to conduct a new hearing at which it would address the merits of the dispute and determine whether Ms. Bowling's personal injury claim is exempt and if so to what extent. The Bankruptcy

Court held the hearing on February 22, 2006. On April 4, 2006, the Bankruptcy Court issued an Order determining that the debtor and the Trustee had a binding agreement and sustained the Trustee's objection to the first $25,000 the Debtor recovers from State Farm and as to the first $25,000 the Debtor recovers under Holstein's underinsured motorist coverage. The Court stated that any recoveries in excess of these amounts would be exempt. It is this order from which Ms. Bowling now appeals.

On September 29, 2001, Ms. Bowling was a passenger in a vehicle driven by William H. Holstein. Holstein struck another vehicle driven by Richard Ray. Ms. Bowling suffered severe injuries in the accident, including multiple fractures which resulted in a spinal fusion. Ray has a $25,0000 automobile liability insurance policy. Holstein's auto policy provides for $50,000 in underinsured motorist coverage. Plaintiff's personal injury attorney asserts that her personal injury claim is in excess of both Holstein and Ray's insurance policies.

On December 19, 2001, Ms. Bowling filed for relief under Chapter 7 of the Bankruptcy Code. On her Schedule B-Personal Property, she listed her personal injury claim as an exempt asset under Mo.Rev.Stat. § 513.427, listing both the value of the exemption and the market value of the claim as unknown. The Trustee objected to the exemption, in part, based on a contention that a portion of the claim attributable to the "uninsured" motorist claim was contractual in nature and not exempt under § 513.427. Ms. Bowling responded and denied the Trustee's objection and denied that the personal injury claim was not exempt.

On June 27, 2002, a hearing was held regarding the Trustee's objection to the debtor's claim of exemptions. Neither Ms. Bowling nor her bankruptcy attorney were at

2

the hearing. There is no testimony or documentation from Ms. Bowling herself regarding an agreement to the June 28, 2002 order. The transcript from the hearing states in part:

Mr. Rouse: This is a case where the debtor was involved in a motor vehicle accident where she was a passenger. There is a $25,000 policy as to the driver of the other car that hit the car she was a passenger in. There was also an under-insured motorist coverage - total package of about $50,000. We have reached an agreement where the stay can be lifted – not stay. Strike that. We have reached an agreement where the exemptions will be sustained – strike that.

The Court: The objection.

Mr. Rouse: My objection to exemptions will be sustained as to the $50,000 in coverage.

The Court: Okay. And then, what, he'll–then Mr. Plaster will file some amended ones. I guess, at some point?

Mr. Rouse: Yeah, We'll -

The Court: All right. Okay. By agreement then, the trustee's objection to the debtor's exemptions on the personal injury claim will be sustained. Text order is okay, I guess?

Mr. Rouse: That's fine, Judge.

(Exhibit 13).

    A text order was entered by the Court on June 28, 2002, granting the Trustee's objection to the debtor's exemptions as to $50,000. (Exhibit 10).

    On November 20, 2002, the Trustee filed a motion to approve the settlement agreement with State Farm Insurance. No such settlement ever existed. On December 13, 2002, the Court entered an order granting that motion. On September 16, 2003, the Trustee filed a Motion for an Order authorizing the Trustee to Execute Release with State Farm Insurance. On September 23, 2003 the bankruptcy court granted this motion. On September 29, 2003 Ms. Bowling filed a response to the Trustee's motion

3

for an order to execute the release and motion to set aside the order granting the same arguing that it was premature, her injury claim was unassignable and unliquidated and that an agreement had not been entered to settle or liquidate her claim. A hearing was scheduled for October 30, 2003. The transcript from that hearing is as follows:

Mr. Rouse: Judge, this is one where we're trying to attempt to settle a personal injury case and I'd ask permission to sign instead of the debtor.

The Court: Uh-huh.

Mr. Rouse: I talked – we may have that resolved and he's talking to his client again today and if the Court doesn't mind, if we could pass one more month, I'd appreciate it.

The Court: Well, now. I'm curious as to what was going on here. Who's been –

Mr. Rouse: Well, this is the deal. There was a – and I can explain it to the Court. What it is is that there is a personal injury claim. There is a claim for underinsured –

The Court: Motorist.

Mr. Rouse: Which is a contractual claim to get from Point A to Point B. In other words, to get to the underinsured motorist claim, you have to have settled out the –

The Court: Primary claim.

Mr. Rouse: –personal injury claim. There is an issue of pursuing the tort-feasor apart from his insurance and –

The Court: Okay. So you all are trying to work it out then.

Mr. Rouse: Right.

The Court: It looked like somebody might have been asleep here. Maybe Mr. Plaster missed something a year ago.

Mr. Rouse: A little bit, but –

(Exhibit 14).

The matter was continued until November 20, 2003. On November 19, 2003, the Trustee withdrew his motion requesting authorization to execute the release with

4

State Farm Insurance.

On June 10, 2004, Ms. Bowling filed a Motion to Reconsider and Vacate the Order Sustaining the Trustee's Objection to her Claim of Exemption Relating to her Personal Injury Claim. The Trustee filed a Motion to Dismiss the above referenced motion as being out of time. A hearing was held on July 1, 2004. During the hearing, Judge Venters observed that Mr. Rouse, the Trustee, and Mr. Plaster, Ms. Bowling's bankruptcy counsel, had struck a deal whereby the first $50,000 of her personal injury claim would come into the bankruptcy estate. Judge Venters asked counsel why the Court shouldn't enforce this agreement. Ms. Bowling's personal injury attorney, Jerry Reynolds argued first that Mr. Rouse and Mr. Plaster did not have a meeting of the minds and an understanding of what they were actually agreeing to. Mr. Reynolds explained that Mr. Rouse thought there was an uninsured motorist claim that was contractual, and would not be exempt. This was based on the fact that Richard Ray, one of the tortfeasors, was insured by State Farm for $25,000. Mr. Rouse believed that the claim was liquidated because State Farm would pay its policy limits. However, Mr. Reynolds points out that there was never a settlement agreement involving Ms. Bowling and Mr. Ray. Counsel also mistakenly believed that after State Farm paid their policy limits, Ms. Bowling could still proceed to sue Mr. Ray for liability.

Secondly, Mr. Reynolds argued that the Order which was entered on June 28, 2002 was not final because it was not executable, because the Trustee could not take any action based on the Order.

## II. STANDARD

A district court reviews the bankruptcy court's decisions for abuse of discretion. See In re Kirwan, 164 F.3d 1175, 1177 (8th Cir. 1999). The district court reviews a bankruptcy court's findings of fact for clear error and conclusions of law are reviewed de novo. In re Stanley, 249 B.R. 509, 512 (W.D.Mo.2000).

## III. DISCUSSION

### A. The Bankruptcy Court's Order

Judge Venters in his April 4, 2006 Order denied the debtor's request to find her personal injury claim exempt because he found that the agreement she reached with the Trustee is binding and that this resolves the Trustee's objections. Judge Venters analyzed whether there was a "meeting of the minds" between the Trustee and her bankruptcy counsel. In making this determination, Judge Venters reviewed the transcript of the June 28, 2002 hearing on the Trustee's objection, the Trustee's deposition taken since that hearing, the Trustee's statements and Plaster's testimony during the February 22, 2006 hearing. Based upon a review of this evidence Judge Venters determined that the Debtor agreed to give the Trustee the first $25,000 she recovers from State Farm and $25,000 from Holstein's underinsured motorist coverage and that the Trustee agreed to allow the Debtor to pursue and keep any recovery in excess of those amounts. Judge Venters also determined that there was consideration for this agreement. Judge Venters found that the Trustee had an honest and reasonable belief in the validity of his claim and that the compromise of that objection was sufficient consideration to support his settlement with the Debtor. The Trustee

6

explained his reasoning to the Bankruptcy Court at the February 22, 2006 hearing. Judge Venters stated that he "agrees with the Debtor (and the Trustee admits in hindsight) that neither of these theories has real merit, but they were not wholly without basis in law and fact. Consequently, the Trustee's compromise of his objection based on those theories constituted valid consideration for the Debtor's agreement to compromise her claim of exemption." (April 4, 2006 Order of Bankruptcy Court, p. 7).

### B. Statement of the Issues

1. Did the Bankruptcy Court err and abuse its discretion in failing to address and rule on the merits of the issue of whether Ms. Bowling's personal injury claim was exempt and if so, to what extent, because Ms. Bowling's pending, unliquidated personal injury claim is not assignable and is exempt under Missouri law in that the Bankruptcy Court did not rule Ms. Bowling's personal injury claim exempt, but instead found that although unliquidated personal injury claims such as Ms. Bowling's are exempt under Missouri law and Trustee's objection to Ms. Bowling's claim of exemption of her personal injury claim has no real merit, the issue was whether there was an enforceable agreement between Ms. Bowling and Trustee and if so, what were its terms?

2. In the event it is determined the Bankruptcy Court properly found the issue to be whether there was an agreement between Ms. Bowling and Trustee, did the Bankruptcy Court err and abuse its discretion in finding that although unliquidated personal injury claims such as Ms. Bowling's are exempt under Missouri law and the Trustee's objection to Ms. Bowling's claim of exemption of her personal injury claim has no real merit, the matter has been "settled" and Ms. Bowling and Trustee agreed to sustain Trustee's objection as to the first $25,000 debtor recovers from State Farm and as to the first $25,000 debtor recovers under Holstein's underinsured motorist coverage because Trustee's objection was and is meritless, without basis in law or fact and states no grounds on which to based such an agreement; there was no meeting of the minds to constitute such an agreement; there was no valid consideration for such an agreement; and Ms. Bowling herself lack informed consent and testified she did not consent to giving Trustee $50,000 and did not consent to any "agreement" or "settlement" which the Bankruptcy Court has unreasonably continued to find since the June 28, 2002 Order, although in the first appeal of this case that Order was declared not to be final?

### C. Did the Bankruptcy Court Err in Failing to Address and Rule on the Merits

7

**of the Issue of Whether Ms. Bowling's Personal Injury Claim was Exempt?**

The Debtor argues that the Bankruptcy Court misunderstood or misinterpreted the language in the remand order. The Debtor argues that on remand, the Bankruptcy Court should have determined the merits of her exemption and the merits of the Trustee's objection. The Debtor states that the Bankruptcy Court should have determined whether Ms. Bowling's injury claim was purely "personal" or if it contained some type of "property" loss and also whether the claim was liquidated. The Bankruptcy Court acknowledged that an unliquidated personal injury claim is exempt, and that the Trustee's objections have no merit at the present time. The Debtor argues that despite this acknowledgment by the Court, the Court instead incorrectly determined that the only issue it would consider was whether the Trustee and plaintiff's counsel "had made an agreement that the first $50,000 of a recovery would come into the estate, that she was agreeing to turn over that amount even though it might have been claimed as exempt."

The Trustee in opposition argues that the District Court did not strictly limit the Bankruptcy Court's actions on remand. The remand order stated that the Bankruptcy Court was to "conduct a new hearing at which it will address the merits of the dispute and will determine whether Ms. Bowling's personal injury claim is exempt and if so to what extent." (September 30, 2006 Order, p. 11).

The Court agrees that the Remand Order did not specifically limit or prevent Judge Venters from determining whether there had been a meeting of the minds between the Trustee and plaintiff's bankruptcy counsel. This Court noted that the transcript of the July 1, 2004 hearing indicated that there "disputed issues regarding

8

whether Mr. Plaster and Mr. Rouse had ever had a meeting of the minds as to what Ms. Bowling's claim was and whether any part of it was liquidated or unliquidated and thus what portion, if any, could be subject to the bankruptcy estate." Thus, the Court finds that the Bankruptcy Court did not err in determining on rehearing whether there had been a meeting of the minds between the Trustee and plaintiff's bankruptcy counsel regarding the Trustee's objection. An inquiry into this issue was a necessary step in addressing the merits of the dispute.

**D. Did the Bankruptcy Court Err in Determining That There Was An Agreement Between Ms. Bowling and the Trustee?**

The Bankruptcy Court in its Order stated, "[t]he Court agrees with the Debtor (and the Trustee admits in hindsight) that neither of these theories has real merit, but they were not wholly without basis in law and fact. Consequently, the Trustee's compromise of his objection based on those theories constituted valid consideration for the Debtor's agreement to compromise her claim of exemption." (April 4, 2006 Bankruptcy Court Order p. 7). The Bankruptcy Court stated that at the hearing, the Trustee explained that he based his objection on his honest belief that the portion of the Debtor's personal injury claim associated with State Farm's $25,000 offer was sufficiently liquidated such that it was no longer exempt and additionally that the $25,000 attributable to Holstein's underinsured motorist coverage was contractual in nature, such that the exemption for unliquidated personal injury claims no longer applied. The Debtor argues that because the Bankruptcy Court erred in finding that there was a meeting of the minds and also in finding that there was consideration for the agreement.

9

The Trustee states in opposition that the Bankruptcy Court did not err in finding that there was a meeting of the minds between the plaintiff's counsel and the Trustee. The Court also does not find that the Bankruptcy Court erred in making this determination. The Bankruptcy Court reviewed the transcript of the June 28, 2002 hearing, the transcript of the Trustee taken since that hearing, the Trustee's statements and Plaster's testimony at the February 22, 2006 hearing. The Court found that the weight of the evidence supported the finding that the Trustee and the Debtor had a meeting of the minds and agreed that the Trustee was entitled to the first $25,000 the Debtor recovers from State Farm and the first $25,000 she recovers from Holstein's underinsured motorist coverage and the Debtor could claim an exemption in any recovery above those amounts.

The Bankruptcy Court also found that there was sufficient consideration for the agreement. The Trustee notes that at the time the parties entered into the agreement, the law regarding what types of claims were exempt was different than it is today. Based on the caselaw as it existed at the time, the Trustee believed that he had a valid objection, because the caselaw drew a distinction between certain components of a personal injury claim, such as lost income and medical expenses that represent damages to property that were not exempt. The law did not change until Judge Federman decided In re Williams, 293 B.R. 769 (Bankr. W.D.Mo. 2003). However, this was after the Trustee and Mr. Plaster had entered into their agreement. Therefore, the Trustee argues, the Bankruptcy Court was correct in finding that the Trustee had an honest and reasonable belief in the validity of the claim. The Court agrees and finds that the Bankruptcy Court did not err in making this determination.

10

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **AFFIRMS** the Order entered by the Bankruptcy Court on April 4, 2006.


Date: November 27, 2006              **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                Fernando J. Gaitan, Jr.
                                     United States District Judge